**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIAIRRA CHAMBRY, Natural Mother

 and Legal Representative of G.G. Doe, a minor,

                                                      Case No.

    Plaintiff,                                 Hon.

v.

LIVONIA PUBLIC SCHOOLS,

JAMES BAIRD, individually and in his official

capacities, MELISSA KARTSIMAS, Principal, in her

individual and official capacity; and, ANDREA OQUIST,

Superintendent, in her official and individual capacity.

    Defendants.

---

MAURICE DAVIS (P76203)
Davis Law Group, PLLC
Attorney for Plaintiff
27600 Northwestern Hwy., Ste. 215
Southfield, MI 48034
P: (313) 818-3238 F: (248) 286-6004
maurice@michiganinjurylawyer.com

---

<u>**COMPLAINT AND JURY DEMAND**</u>

NOW COMES Plaintiff, TIAIRRA CHAMBRY, as Natural Mother and Legal Representative of G.G. Doe, a Minor, by and through her attorneys, DAVIS LAW GROUP, PLLC, and for her complaint against the above-named Defendants, follows:

**JURISDICITON, VENUE, AND PARTIES**

1.      This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681, et seq., as more fully set forth herein.

2.      This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. 1983.

3.      Subject matter jurisdiction is founded upon 28 U.S.C. 1331 which gives District Courts jurisdiction over all civil actions arising under the constitution, laws, and treaties of the United States.

4.      Subject matter jurisdiction is also founded upon 28 U.S.C. 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of congress providing for equal right of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any act of congress providing for the protection of civil rights.

5.      Plaintiff further invokes the supplemental jurisdiction of the court, pursuant to 28 U.S.C. 1367(a), to hear and decide claims arising under state law that are so

related to the claims within the original jurisdiction of this court that they form part of the same case or controversy.

6.      The claims are cognizable under the United States Constitution, 42 U.S.C. 1983, 20 U.S.C. 1681 et seq., and under Michigan Law.

7.      The events giving rise to this lawsuit occurred in Wayne County, Michigan, which sits in the Southern Division of the Eastern District of Michigan.

8.      Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

9.      Plaintiff TIAIRRA CHAMBRY was, at all times relevant to this cause of action, a resident of Wayne County, Michigan. She brings this cause of action solely in a representative capacity as natural mother, next of friend, and legal representative of and on behalf of her minor daughter, G.G. Doe (hereinafter G.G. Doe or "G.G").

10.     Defendant Baird is a teacher consultant for visually impaired and a certified orientation and mobility specialist and was a resident of the State of Michigan at all relevant times. Defendant Baird was, at all times relevant to this cause of action, an employee of a public school district, acting as a Livonia Public Schools School District employee, and acting within the scope of his employment and under the color of state law.

11.     Defendant Livonia Public Schools ("LPS") was, at all times relevant to this cause of action, a public school district incorporated under the laws of the State of Michigan and a Michigan municipal corporation with its principal place of business located in the County of Wayne, State of Michigan. Defendant LPS at all times relevant to this cause of action regularly received Federal monies for purposes of providing services to special needs students. Upon

information and belief, Defendant LPS receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 (a).

12.     Upon information and belief, in 2015 Defendant Andrea Oquist (hereinafter "Superintendent") became the Interim Superintendent for Defendant LPS after serving as the district's director of elementary programs. After serving for four months as the Interim Superintendent the district decided that Oquist become the full time Superintendent. Oquist was, at all times relevant to this cause of action, a resident of Wayne County, Michigan and/or conducted business in Wayne County, Michigan. Defendant Oquist was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of her employment and under the color of state law.

13.     Upon information and belief, Melissa Kartsimas (hereinafter "Principal") was the Principal for Kennedy Elementary School at the time of the subject incident.  The Principal was at all times relevant to this cause of action, a resident of Wayne County, Michigan and/or conducted business in Wayne County, Michigan. Defendant Principal was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of her employment and under the color of state law.

## COMMON ALLEGATIONS

14.     This is action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by TIAIRRA CHAMBRY, on behalf of of G.G. Doe, a Minor, as a result of the acts, conduct and omissions of Defendant Baird, Defendant Superintendent, Defendant Principal, and Livonia Public Schools ("LPS"), and their respective employees,

4

representatives, and agents, relating to sexual assault, abuse molestation, nonconsensual sexual touching, and harassment by Defendant Baird against Plaintiff G.G. Doe.

15.     Upon information and belief, at all relevant times, Defendant Baird was employed by Defendant LPS and contracted out to work for Kennedy Elementary School.

16.     At all relevant times, Defendant LPS, Defendant Superintendent, Defendant Principal, and Defendant Baird were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan.

17.     At all relevant times, including the years of 2013 to 2021, Defendant Baird was acting in the scope of his employment or agency with Defendant LPS.

18.     Upon information and belief, Defendant Baird worked for multiple school districts and in many different schools, including LPSSD and Garden City Public Schools (hereinafter "GCSD"), in various positions and capacities from 2013 to 2021.  For over 7 years, Defendant Baird had unfettered access to visually impaired minor girls through the LPSSD and GCSD.

19.     Upon information and belief, Defendant Baird was employed by Defendant LPS 2013 to 2021 in various positions, including but not limited to:

        A.   Teacher   Consultant   for   the   visually impaired;

        B.   Certified   Orientation   and   Mobility Specialist;

20.     As a teacher assistant for the visually impaired, Defendant Baird's care and treatment should have consisted largely of consulting with parents and school personnel

on accommodations for children who are visually impaired, including students of Defendant LPS and Kennedy Elementary School.

21.     As a Certified Orientation and Mobility Specialist, Defendant Baird's care and treatment should have consisted largely of training the visually impaired to travel safely within their community.

22.     While employed by Defendant LPS, Defendant Baird practiced the above-described jobs at Kennedy Elementary School.

23.     G.G. Doe, attended Kindergarten at Kennedy Elementary School in 2016 or 2017 when she was a 5-year-old or 6-year-old. G.G. Doe was vision impaired with cataracts crossed eyes, and suffered from chronic asthma.

24.     Defendant Baird was hired by LPS and contracted to Kennedy Elementary School as a teacher consultant for the visually impaired and a certified orientation and mobility specialist. Defendant Baird was the designated Orientation and Mobility Specialist for children who required special education due to deficiencies in their vision. G.G. was provided with treatment at the request of her teacher and without a third party's supervision.  Defendant Baird provided that treatment to G.G. Doe. G.G. Doe, a minor child, reasonably believed that she was required to consult and receive treatment from Defendant Baird because she was instructed to do so by her teacher.

25.     G.G. Doe had no reason to suspect Defendant Baird was anything other than a competent and ethical vision specialist.

26.     In or around 2016 or 2017, under the guise of treatment, Defendant Baird sexually battered, abused, and molested G.G. by nonconsensual sexual touching, sexual battery and sexual harassment of a minor child.

6

27.     G.G. was placed in a program run by Defendant Baird to train disabled students the skills to find success irrespective of their vision loss. G.G. was placed in this program due to her disabilities.

28.     The assault, sexual harassment, and sexual battery was perpetrated in an empty classroom at Kennedy Elementary School within the Livonia Public Schools School District.

29.     G.G. was approximately 5-6 years old when Defendant Baird assaulted her.

30.     During his employment, agency, and representation of Defendant LPS, Defendant Baird sexually assaulted, abused, and molested G.G. DOE by engaging in nonconsensual sexual touching, sexual battery, sexual assault, and sexual harassment.

31.     In 2016 or 2017, G.G.'s kindergarten teachers, Mrs. Haley Albertsen and/or Lori Marsh from Kennedy Elementary School, allowed Defendant Baird to remove G.G. from their classroom to complete a vision exam.

32.     Defendant Baird took G.G. to an empty room where he was alone with her and without any supervision. Under the guise of providing G.G. with eye exam testing, Defendant Baird used his fingers to touch her vagina underneath her pants.

33.     On June 12, 2023, G.G. after years of struggling emotionally told her mother that she was molested by Defendant Baird.  G.G's mother reported the molestation to the Livonia Police Department and the case is currently under review by a prosecutor.

34.     All of Defendant Baird's acts against G.G. were conducted under the guise of providing tests and training for the visually impaired students in an empty classroom at Kennedy Elementary School while Baird abused G.G. and other victims.

35.     Defendant Baird used his position of trust and confidence in an abusive manner, causing G.G. to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

### *Other Incidents of Child Molestation*

36.     Prior to these incidents Defendant Baird had already been fired from the Allegen Public School District in 2010 for sexually harassing young females.  As early as 2007 Defendant Baird was sexually harassing girls on a swim team at an Allegen school and several of the girls quit the swim team as a result.  An internal investigation was conducted forbidding him to work with female students.  Defendant LPS failed to request a 1230-B form or conduct a proper background check that would have revealed his propensity to sexually harass minor children; and, would not have hired him endangering its disabled minor students and exposing them sexual battery.

37.     Defendant Baird sexually molested a ten-year-old female student at Douglas 3-4 Campus on January 4, 2018, and Defendant Baird sexually molested another female student at Marshall Upper Elementary School in Westland, MI on March 1, 2018.  In these alleged occurrences, Defendant Baird groped one minor's breasts in a room where he was alone with her and then on another occasion Baird placed his penis in another minor's hand. Garden City Public Schools and Police were put on notice of these crimes, however Baird was not arrested nor fired from his job.  In 2018, Baird molested a 13-year-old visually impaired girl at a Westland elementary school after blindfolding her.

38.     On or about October 16, 2018, Defendant Baird sexually molested a visually impaired female student, P.H. Doe, a Douglas Elementary student.  Defendant Baird

was employed by Defendant LPS and pursuant to an agreement was contracted out to GCPS as a vision specialist at Douglas Elementary to provide services and instruction to students with visual and physical impairments, including P.H. Doe. PH Doe attended one of her regular service sessions with Defendant Baird. Defendant Baird placed eye occluders on P.H. Doe, a device that completely excludes the user's vision.  Defendant Baird then placed his penis in P.H. Doe's hand. Upon feeling Defendant Baird's penis in her hand, P.H. Doe informed Defendant Baird that she felt uncomfortable and removed the occluders to find Baird pulling up and zipping up his pants. On or about December 25, 2020, P.H. Doe reported to her mother the incidents she experienced with Defendant Baird as described above.  Ms. Washington upon being informed by P.H. Doe of those incidents contacted the Garden City Police Department on or around December 25, 2020.

   39. Defendant Baird sexually molested a minor female student, M.S. Doe, who suffered from cerebral palsy and visual impairments and was enrolled in WWCS at Marshall Upper Elementary. Defendant Baird was employed by LPS and pursuant to an agreement was contracted out to WWCS as a vision specialist at Marshall Upper Elementary to provide services and instruction to students with visual impairments, including M.S. Doe. Defendant Baird regularly conducted and provided M.S. Doe vision specialty services in a room at Marshall Upper Elementary.  During the years 2017 through 2019 while M.S. Doe was receiving vision specialty services, Defendant Baird would play a game with M.S. Doe that he called the "sucker game" and involved oral sex and touching of genitals. It involved the promise of a sucker. M.S. Doe developed pink eye and thrush during this time. M.S. Doe confided in her teacher during that time period but nothing was done.

40.     In a similar incident, in 2019 Defendant Baird sexually molested a minor female child, FA DOE, when she was ten-years-old and in third grade at Douglas Elementary School in Garden City.  FA DOE was vision impaired and an immigrant from Iraq.  Defendant Baird took FA DOE to a secluded room for an exam and instructed her to sit on a chair in front of him. She complied. Defendant Baird placed a blind fold over her glasses. She asked if the blindfold could be loosened as they were too tight and causing pain.  Defendant Baird refused to loosen the blindfold, explaining that they were necessary for the exam.  Although the blindfold was covering her glasses, she was still able to see what was happening when she looked down. What she saw was unimaginable.  She watched as Defendant Baird unzipped his pants and exposed his penis to this 10-year-old child. Defendant Baird then grabbed her hand and used it to grasp and caress his penis. As this occurred, Defendant Baird asked her how it felt. Once Defendant Baird was content with his perverted sexual gratifications, He pulled up his pants and took her to the school's administrative office.  At the office, Defendant Baird told the staff that he wished to take her outside for a walk to teach her about fire hydrants and stop signs. The staff allowed Defendant to exit the building without requiring him to sign the student out of the school.  The 10-year-old minor child already understood the intricacies of fire hydrants and stop signs. Nonetheless, she did as she was instructed to and went on a walk with Defendant Baird. Defendant Baird held her hand and walked her away from the school campus and into the surrounding neighborhood. At that time, Defendant Baird instructed her that if she ever spoke about what had just happened in the classroom (the molestation) to anyone she would be punished. Upon information and belief, in the fall of 2021, she changed schools and was now attending Greer Park Elementary School in Dearborn MI. She developed a close bond with Gabrielle Popp, a teacher consultant for the visually impaired. On April 14, 2022, she

10

opened up to Ms. Popp about Defendant Baird's molestation. Ms. Popp took all appropriate actions, including informing her parents as well as the Garden City Police Department of the crime that had been committed to this minor child.  Based on this investigation, Defendant Baird was charged with 2nd degree sexual assault of a minor.

41. On or about December 9, 2019, Defendant Baird sexually molested a minor female child, Z.F. Doe in the course and scope of his employment with Defendant LPS. Defendant LPS contracted Defendant Baird out to GCPS pursuant to an agreement, as a vision specialist at Douglas Elementary to provide services and instruction to students with visual impairments, to Z.F. Doe. Z.F. Doe suffered from visual impairments, including Oculocutaneous albinism.  On or about December 9, 2019, Z.F. Doe attended one of her regular service sessions with Defendant Baird. On that day, Defendant Baird placed eye occluders on Z.F. Doe, which completely excluded her vision.  Defendant Baird then proceeded to place his penis in Z.F. Doe's hand and around her mouth. Upon feeling Defendant Baird's penis in her hand and around her mouth, Z.F. Doe informed Defendant Baird that she felt uncomfortable and removed her occluders to find Baird pulling up and zipping his pants. On or about December 9, 2019, Z.F. Doe immediately reported the incident with Defendant Baird to her mother, who then reported the incident Z.F. Doe's third grade teacher, Mrs. Elizabeth Abbot, which prompted an immediate investigation by GCPS and the Garden City Police Department. After the December 9, 2019, incident, GCPS determined that Baird would never again provide services to any GCPS student. GCPS conducted a Title IX investigation into the incident involving Z.F. Doe, and the Title IX report listed three reasons for their determination to exclude Defendant Baird from providing services to its students, which included that 1) Defendant Baird's examination of Z.F. Doe lasted only 13 minutes despite Defendant Baird's

acknowledgment that his sessions normally lasted between 30-40 minutes; 2) Defendant Baird was required to sign in and out when entering and leaving the school and he failed to sign out on December 9, 2019; and 3) GCPS recognized that Defendant Baird's use of the occluders on Z.F. Doe on December 9, 2019, was impractical and the school was unable to determine how the exercises, including, but not limited to, the use of the occluders, performed on Z.F. Doe by Defendant Baird would benefit Z.F. Doe's functional independence goals.  Defendant Baird throughout the investigation(s) claimed that he was given permission to use occluders with students in the Visual Impairment Program but failed to produce any documents to establish that he was granted such permission.  GCPS informed LPS of their decision to disallow Defendant Baird to continue providing services to students at GCPS.

42.    Upon information and belief, a female student at Wayne-Westland Community Schools District (WWCSD) who was receiving vision specialty services from Defendant Baird had reported to Wayne-Westland Community Schools District a sexual assault by Defendant Baird on February 11, 2020. Upon information and belief, in 2020, Baird molested a 15-year-old visually impaired girl at a Westland elementary school after blindfolding her.  At all times relevant to this cause of action, K.B. Doe suffered from physical impairments, including spastic cerebral palsy and vision impairment, which requires her to wear glasses, and was enrolled in WWCSD at Stevenson Middle School in 2020. At all times relevant to this cause of action, Defendant Baird was employed by LPS and pursuant to an agreement was contracted out to WWCSD as a vision specialist at Stevenson Middle School to provide services and instruction to students with visual and physical impairments, including K.B. Doe. Upon information and belief, before K.B. Doe interacted with Defendant Baird at Stevenson Middle School, a 3rd grade female student at Garden City Public Schools who was

receiving vision specialty services from Defendant Baird had previously reported to Garden City Public Schools a sexual assault by Defendant Baird on December 9, 2019. At the time of the December 9, 2019, incident, LPS had contracted out Defendant Baird to Garden City Public Schools, similar to their arrangement with WWCSD.  On or about December 9, 2019, Garden City Public School informed LPS in writing of the allegations of sexual assault of a 3rd grade student at Garden City Public Schools by Defendant Baird. After the December 9, 2019, incident, Garden City Public Schools conducted a Title IX investigation into the incident and subsequently determined that Baird would never again provide services to any Garden City Public Schools student. Despite knowledge of the allegations of a sexual assault by a 3rd grade student at Garden City Public Schools on December 9, 2019, LPS did not terminate or conduct an appropriate and thorough investigation of Defendant Baird's sexual assault conduct.  In February of 2020, Defendant Baird was sent to Stevenson Middle School in WWCSD to perform eye examinations for students despite knowledge by LPS that a 3rd grade student at Garden City Public Schools had reported a sexual assault by Defendant Baird only two months earlier.  On that day, Defendant Baird performed an eye examination on K.B. Doe. During the examination, Defendant Baird covered K.B. Doe's eyes. On that day, after covering K.B. Doe's eyes, Defendant fondled her, and placed his penis in her hand and her mouth. After the examination, K.B. Doe returned to her class and told her teacher, Ms. Joanna Eiwen, that Mr. Baird made her uncomfortable and that she did want to work with Defendant Baird again. On February 11, 2022, K.B. Doe disclosed her sexual abuse by Defendant Baird to her parents for the first time, after she had experienced an unrelated but triggering event at school that same day.

43.     LPS and GCPS's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of G.G. DOE and other victims was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.,* 42 U.S.C. § I 983, as well as other Federal and State laws.

44.     Defendant LPS and GCPS's failure to properly supervise Defendant Baird and its negligence in retaining Defendant Baird were in violation of Michigan common law.

45.     The acts, conduct, and omissions of LPS and GCPS and their policies, customs, and practices, with respect to investigating sexual assault allegations, severely compromised the safety and health of G.G. and an unknown number of individuals, and have resulted in repeated instances of sexual assault, sexual battery, sexual harassment, abuse, and molestation of G.G. and others by Defendant Baird, which has been devastating for G.G. and her family.

46.     This action arises from LPS, GCPS's, and the other Defendants' blatant disregard for G.G.'s federal and state rights, and Defendants' deliberately indifferent and unreasonable response to teacher-on-student sexual assault, abuse, and molestation.

47.     Upon information and belief, on or about February 2020, Wayne Westland Community Schools District informed LPS in writing of the allegations of sexual assault of a student at Garden City Public Schools by Defendant Baird.

48.     Upon information and belief, after the December 9, 2020, incident, Garden City Public Schools conducted a Title IX investigation into the incident and subsequently determined that Baird would never again provide services to any Garden City Public Schools student.

49.     Upon information and belief, despite knowledge of the allegations of the Fall 2019 incident in question, LPS did not terminate or conduct an appropriate and thorough investigation of Defendant Baird's sexual battery, sexual assault, sexual harassment of disabled students and general misconduct.

50.     Upon information and belief, Defendant LPS did not notify and made no attempt to warn or advise current students or their parents.

51.     Upon information and belief, Defendant Baird remained under the employ of Defendant LPS until he tendered his resignation on August 5, 2022.  Defendant Baird was never fired.

52.     On February 1, 2023, Defendant Baird was arrested and charged in Wayne County, Michigan on 2 charges of first-degree criminal sexual conduct, one of whom occurred with a person under 13 and 2 charges of second-degree criminal sexual conduct, one of whom occurring with a person under 13.  Numerous news articles have publicized the horror of the molestations, forcing G.G. and other victims to relive the trauma of the sexual assaults.

## COUNT I –
## EXCESSIVE FORCE VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT BAIRD

53.     Plaintiffs reassert and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Defendant Baird was at all times relevant to this cause of action an employee of a public school, acting as a public-school employee, and acting within the scope of his employment and under the color of state law.

55.     At all times relevant to this cause of action, G.G. Doe was afforded the constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from the use of unnecessary, unreasonable, illegal, and excessive force.

56.     At all times relevant to this cause of action, Defendant Baird owed a duty to the public, but especially to G.G. Doe, to act in a lawful and reasonable manner, and to avoid the use of unnecessary, unreasonable, illegal, and excessive force, in violation of G.G. Doe's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.

57.     Defendant Baird engaged in physical sexual abuse of G.G. Doe,. Doe's which constituted unnecessary, unreasonable, illegal, and excessive force, in violation of G.G. Doe's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, as well as violations of the criminal laws of the State of Michigan and violations of the policies and procedures that were or should have been in effect at Defendant LPS.

58.     Defendant Baird's conduct as described herein was objectively unreasonable and any reasonable governmental official in Defendant Baird's position at all times relevant to this cause of action would have known that the use of physical force and/or physical sexual abuse under the circumstances as they were presented to him was unnecessary, unreasonable, illegal, and excessive and would have been under the same or similar conditions that existed and as alleged herein.

59.     The use of unnecessary, unreasonable, illegal, and excessive force by Defendant Baird against G.G. Doe amounted to a violation of G.G. Doe's rights under the Fourth and Fourteenth Amendment of the United States Constitution, and those rights were clearly

established at all times relevant to this cause of action, and which a reasonable person and governmental official in Defendant Baird's position would have known.

60.     Defendant Baird is not entitled to qualified immunity.

61.     As a direct and proximate result of Defendant Baird's use of excessive force and physical sexual abuse of G.G. Doe, G.G. Doe has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

   a.  Physical pain and suffering;

   b.  Mental anguish;

   c.  Fright and shock;

   d.  Denial of social pleasure and enjoyments;

   e.  Embarrassment, humiliation, and mortification;

   f.  Reasonable expenses of necessary medical care, treatment and services;

   g.  Loss of earnings capacity;

   h.  Any and all injuries or damages that are learned through the course of discovery.

62.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

63.     The actions of Defendant Baird as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm

that would be inflicted upon G.G. Doe. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant Baird and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 plus costs, interest, and attorney fees, as well as punitive and-or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT II –**
**SUBSTANTIVE DUE PROCESS VIOLATION OF CONSTITUTIONAL RIGHTS**
**UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES**
**CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 –DEFENDANT BAIRD**

64.    Plaintiffs reassert and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65.    Defendant Baird was at all times relevant to this cause of action an employee and/or administrator of a public school, was acting as a public-school employee and/or administrator and was acting within the scope of his employment and under the color of state law.

66.    At all times relevant to this cause of action, G.G. Doe had the rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution not to be deprived of life without due process.

67.    At all times relevant to this cause of action, G.G. Doe was afforded the rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity, including the right to be free from sexual

abuse at the hands of a school employee and particularly when it is not administered for any pedagogical purpose but only for the gratification of Defendant Baird.

68.     At all times relevant to this cause of action, G.G. Doe had the right under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to be free from arbitrary government conduct that lacks all socially redeeming value.

69.     Defendant Baird engaged in physical sexual abuse of G.G. Doe, which constituted unnecessary, unreasonable, illegal, and excessive force, in violation of G.G. Doe's rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity, and to be free from state actions that deprive a person of life, liberty, or property without due process of law, as well as violations of the criminal laws of property without due process of law, as well as violations of the criminal laws of the State of Michigan and violations of the policies and procedures that were or should have been in effect at Defendant LPS.

70.     Those rights were at all times relevant to this cause of action clearly established in that any reasonable governmental official in Defendant Baird's position would have known that such rights were being violated when Defendant Baird inflicted physical sexual abuse on G.G. Doe has alleged herein.

71.     The acts of physical sexual and emotional abuse by Defendant Baird of G.G. Doe, under all circumstances relevant to this cause of action caused injury so severe, was so antithetical to the child's special needs presented, and was so inspired by malice or sadism rather than a mere careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power that is literally shocking to the conscience.

72.     The acts of physical and emotional abuse by Defendant Baird of G.G. Doe, under all circumstances relevant to this cause of action lacked any and all pedagogical purpose or justification and lacked any socially redeeming value.

73.     Defendant Baird, when engaging in the conduct as set forth above, had reasonable opportunity to deliberate various alternatives and did not face the need to make a hurried judgment.

74.     The acts of physical sexual abuse by Defendant Baird of G.G. Doe, under all circumstances relevant to this cause of action amount to deliberate indifference to the risk that G.G. Doe would suffer harm and to G.G.. Doe's health and safety of which Defendant Baird was specifically aware and yet disregarded.

75.     Defendant Baird's deliberate indifference under the circumstances relevant to this cause of action reflect a failure to even care about the health and safety of G.G. Doe and such deliberate indifference under such circumstances thus literally shocks the conscience.

76.     The use of unnecessary, unreasonable, illegal, and excessive force by Defendant Baird against G.G. Doe amounted to a violation of G.G. Doe's rights under the Due Process Clause under the Fourteenth Amendment to the United States Constitution to personal security and bodily integrity, and to be free from state actions that deprive a person of life, liberty, or property without due process of law, and those rights were clearly established at all times relevant to this cause of action, and which a reasonable person and governmental official in Defendant Baird's position would have known.

77.     Defendant Baird's conduct as described herein was objectively unreasonable and any reasonable governmental official in Defendant Baird's position at all times relevant to this cause of action would have known that the use of physical force and physical sexual abuse

20

under the circumstances as they were presented to him was unnecessary, unreasonable, illegal, and excessive under the same or similar conditions that existed as alleged herein.

78.     Defendant Baird is not entitled to qualified immunity.

79.     As a direct and proximate result of Defendant Baird's use of excessive force and physical sexual abuse of G.G. Doe, G.G.. Doe has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

      a.   Physical pain and suffering;

      b.   Mental anguish;

      c.   Fright and shock;

      d.   Denial of social pleasure and enjoyments;

      e.   Embarrassment, humiliation, and mortification;

      f.   Reasonable expenses of necessary medical care, treatment and services;

      g.   Loss of earning capacity;

      h.   Any and all injuries or damages that are learned through the course of discovery.

80.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant Baird, this Court should order and award additional damages, to be allowed so as to satisfy any and all such inadequacies.

81.     The actions and/or deliberate indifference of Defendant Baird as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in

conscious disregard of, the harm that would be inflicted upon G.G. Doe. As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant Baird and to deter others from like conduct.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT III –**
**EQUAL PROTECTION VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT BAIRD**

82.    Plaintiffs reassert and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Defendant Baird was at all times relevant to this cause of action an employee of a public school, was acting as a public-schoolemployee, and was acting within the scope of his employment and under the color of state law.

84.    The Equal Protection Clause of the United States Constitution prevents state actors from making distinctions that burden a fundamental right, target a suspect class, or intentionally treat one individual differently from others similarly situated without any rational basis.

85.    At all times relevant to this cause of action, G.G. Doe had the rights under the Fourteenth Amendment of the United States Constitution to equal protection under the law.

86.    G.G.. Doe is considered a disabled individual and is therefore part of a protected class of individuals under the Equal Protection Clause of the United States Constitution.

87.    The Equal Protection Clause of the United States Constitution forbids a governmental actor from treating disabled individuals differently where those actions are not rationally related to some legitimate governmental purpose.

88.    Defendant Baird engaged in physical sexual abuse of G.G. Doe, which violated G.G. Doe's rights under the Equal Protection Clause of the United States Constitution in that such physical sexual abuse was not inflicted on young children in the LPS district who did not have disabilities.

89.    Defendant Baird's actions of treating G.G. Doe differently from similarly situated non-disabled students by inflicting physical sexual abuse on G.G. Doe when such physical sexual abuse was not inflicted on similarly situated non-disabled students was not rationally related to any legitimate governmental purpose.

90.    Defendant Baird's conduct as described herein was objectively unreasonable and any reasonable governmental official in Defendant Baird's position, at all times relevant to this cause of action, would have known that treating G.G. Doe differently than similarly situated non-disabled students where such treatment was not rationally related to any legitimate governmental purpose was a violation of G.G. Doe's constitutional rights under the Equal Protection Clause of the United States Constitution.

91.    Defendant Baird is not entitled to qualified immunity.

92.    As a direct and proximate result of Defendant Baird's violation of G.G. Doe's rights under the Equal Protection Clause of the United States Constitution, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

a) Physical pain and suffering;

b) Mental anguish;

c) Fright and shock;

d) Denial of social pleasure and enjoyments;

e) Embarrassment, humiliation, and mortification;

f) Reasonable expenses of necessary medical care, treatment and services;

g) Loss of earning capacity;

h) Any and all injuries or damages that are learned through the course of discovery.

93.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant Baird, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

94.     The actions and/or deliberate indifference of Defendant Baird as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon G.G. Doe. As a result of such intentional conduct, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendant Baird and to deter others from like conduct.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT IV –**

24

**MUNICIPAL/SUPERVISORY LIABILITY PURSUANT TO 42 U.S.C. § 1983 –
DEFENDANTS OQUIST, SIMMONS, DOMAN, LPS**

95.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

96.     Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants Oquist, Simmons, Doman, LPS, and WWCSD owed G.G. Doe certain duties to properly hire, supervise, monitor, and train its employees so as not violate the constitutional rights of students, and G.G. Doe in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent, or otherwise protect students such as G.G. Doe in the event that such violations may occur.

97.     Defendants Oquist, Simmons, Doman, LPS, and WWCSD are liable pursuant to 42 U.S.C § 1983, in that their policies, procedures, regulations, and customs, or that their failure to enact policies, procedures, regulations, and customs, caused and were the driving force behind the violation of G.G. Doe's constitutional rights as alleged throughout this Complaint.

98.     Defendant Fisher was at all times relevant to this cause of action an employee and/or administrator of GCPS, was acting as an employee and/or administrator of GCPS and was acting within the scope of his employment and under the color of state law.

99.     Defendant Oquist was at all times relevant to this cause of action an employee and/or administrator of LPS, was acting as an employee and/or administrator of LPS and was acting within the scope of her employment and under the color of state law.

100.     Defendant Oquist at all times relevant to this cause of action held a supervisory and administrative role and had decision-making authority at LPS to enact policies, procedures, regulations, or customs regarding, but not limited to, the endangerment and abuse of students

and/or children, and had final decision- making authority on matters that included, but were not limited to, training, hiring, retaining, staffing, investigating, and/or disciplining employees and personnel.

101.   Defendant Simmons was at all times relevant to this cause of action an employee and/or administrator of WWCSD, was acting as an employee and/or administrator of WWCSD and was acting within the scope of her employment and under the color of state law.

102.   Defendant Simmons at all times relevant to this cause of action held a supervisory and administrative role and had decision-making authority at WWCSD to enact policies, procedures, regulations, or customs regarding, but not limited to, the endangerment and abuse of students and/or children, and had final decision-making authority on matters that included, but were not limited to, training, hiring, retaining, staffing, investigating, and/or disciplining employees and personnel.

103.   Defendant Doman was at all times relevant to this cause of action an employee and/or administrator of WWCSD, was acting as an employee and/or administrator of WWCSD and was acting within the scope of her employment and under the color of state law.

104.   Defendant Doman at all times relevant to this cause of action held a supervisory and administrative role and had decision-making authority at WWCSD to enact policies, procedures, regulations, or customs regarding, but not limited to, the endangerment and abuse of students and/or children, and had final decision-making authority on matters that included, but were not limited to, training, hiring, retaining, staffing, investigating, and/or disciplining employees and personnel.

105.   Defendants Oquist, Simmons, Doman, LPS, and WWCSD at all times relevant to this cause of action had knowledge of Defendant Baird's propensities to provide services and

instruction to minor students while he was alone and unsupervised and in an area that was closed off and not visible to other school personnel.

106.    Defendants Oquist, Simmons, Doman, LPS, and WWCSD, with such knowledge, condoned, encouraged, or otherwise knowingly acquiesced such conduct, which created substantial risks to G.G. Doe that resulted in, or was the driving force behind, the constitutional violations as alleged herein, because they knew that privacy and lack of supervision or the ability of other personnel to observe Baird's interaction with students was essential to his ability to carry out abuse..

107.    Defendants Oquist, Simmons, Doman, LPS, and WWCSD with such knowledge condoned, encouraged, or otherwise knowingly acquiesced such conduct and thus acted with deliberate indifference to the substantial risks that G.G. Doe would be sexually abused that would result in violation of G.G. Doe's constitutional rights as set forth throughout this Complaint.

108.    Defendants Oquist, Simmons, Doman, LPS, and WWCSD were deliberately indifferent to G.G. Doe's constitutional and other rights by failing to promulgate a policy and failing to properly train personnel and employees to prevent the unconstitutional, unlawful, and tortious mistreatment of the students, including G.G. Doe, as alleged throughout this Complaint.

109.    Defendants Oquist, Simmons, Doman, LPS, and WWCSD were deliberately indifferent to G.G. Doe's constitutional and other rights by failing to supervise or otherwise take action to prevent the constitutional violations as alleged throughout this Complaint when Defendants Oquist, Simmons, Doman, LPS, and WWCSD had knowledge that Defendant Baird did and would engage in conduct that created the substantial risks that G.G. Doe would

be sexually abused that would result in violation of G.G. Doe's constitutional rights as set forth throughout this Complaint.

110.   Defendants Oquist, Simmons, Doman, LPS, and WWCSD, through their policies, procedures, regulations, or customs, or lack thereof, breached their duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward G.G. Doe specifically, in the following ways, including, but not limited to:

a.   Failing to properly train its employees regarding the proper use of reasonable and necessary force under the circumstances presented;

b.   Failing to enact or provide training on proper policies regarding the recognition of the risks that physical sexual abuse will occur;

c.   Failing to enact or provide training on proper policies regarding allowing adults such as Defendant Baird to be alone and unsupervised with minor students such that those minor students were at an increased risk of harm;

d.   Hiring and/or the retention of employees whose character and personality pose a potential danger to the public in general and G.G. Doe in particular;

e.   Failure to adequately monitor the conduct and behavior of its employees in general, but specifically Defendant Baird, relative to the propensity to engage in the physical sexual abuse of children such that, despite written policies against such abuse, failure to sufficiently take action to prevent the occurrence of abuse of G.G. Doe has led to the formation of a custom that such abuse will be encouraged and tolerated;

f.   Failure to have proper policies, procedures, and training to address with the danger of using physical sexual abuse against individuals, including G.G. Doe;

g.   Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control employees, including Defendant Baird, who are known or should have been known to engage in improper use of physical sexual abuse;

h.   Failure to supervise and/or train employees to prevent violation of students' Constitutional rights;

i.   Sanctioning the use of physical sexual abuse by failing to adequately discipline or terminate employees who are known to have violated the Constitutional right of students on prior occasions, including but not limited to Defendant Baird;

j.   Having a custom, policy, or practice of tolerating the violation of constitutional rights by employees;

k.   Ratifying the violation of constitutional rights by employees;

l.   Employing and retaining improperly trained employees and administrators;

m.   Other acts and omissions which may be learned through the course of discovery.

111.   The failures and/or actions set forth above to take action to prevent the physical sexual abuse by Defendant Baird of G.G. Doe were a common pattern and practice among employees and personnel of deliberate indifference such that it constituted a policy or custom and those were followed and enforced by supervisors and administrators, including, but not limited to, Defendants Oquist, Simmons, Doman, LPS, and WWCSD.

112.   The above-enumerated actions, failures, and/or inactions constituted deliberate indifference to the danger to G.G. Doe's health, safety, and violation of their constitutional rights by Defendant Baird, including, but not limited to, those alleged in this Complaint.

113.   As a direct and proximate result of the above-enumerated actions, failures, and/or inactions, G.G. Doe has suffered and will continue to suffer damages, both economic and non-

economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

    a.   Physical pain and suffering;

    b.   Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasure and enjoyments;

    e.   Embarrassment, humiliation, and mortification;

    f.   Reasonable expenses of necessary medical care, treatment and services;

    g.   Loss of earning capacity;

    h.   Any and all injuries or damages that are learned through the course of discovery.

114.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiffs for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

115.    The actions and/or deliberate indifference of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon G.G. Doe. As a result of such intentional conduct, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of

$75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT V –
## GROSS NEGLIGENCE/WILLFUL AND WANTON MISCONDUCT – DEFENDANTS BAIRD, OQUIST, KARTSIMAS

116.   Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

117.   Defendant Baird owed G.G. Doe a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid the use of unnecessary, unjustified, illegal and unreasonable, excessive force and/or physical sexual abuse.

118.   Defendant Baird was grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that injury would result, and/or acted in an unnecessary or willful or wanton manor toward G.G. Doe and was indifferent to physical and emotional sexual abuse inflicted on G.G. Doe, and nevertheless maliciously carried out those acts, and thus breached the above duties in a number of ways.

119.   Defendant Baird's conduct, which amounted to gross negligence, was the proximate cause of G.G. Doe's injuries.

120.   Defendant Baird is not entitled to immunity under Michigan law.

121.   Defendants Oquist and Kartsimas, owed G.G. Doe a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid engaging in conduct that created the substantial risks that G.G. Doe would be sexually abused.

31

122.   Defendants Oquist and Kartsimas had knowledge that Defendant Baird did and would engage in conduct that created the substantial risks that G.G. Doe would be sexually abused.

123.   Defendants Oquist and Kartsimas nevertheless allowed Defendant Baird to engage in conduct that created the substantial risks that G.G. Doe would be sexually abused.

124.   Defendants Oquist and Kartsimas by doing so were grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that injury would result, and/or acted in an unnecessary or willful or wanton manor toward G.G. Doe, and were indifferent to the substantial risks that physical and emotional sexual abuse would be inflicted on G.G. Doe, and nevertheless maliciously carried out those acts.

125.   Defendants Oquist and Kartsimas conduct in that regard, together or separately, were the proximate cause of damages to G.G. Doe in that it was foreseeable that such conduct, together or separately, would result in child abuse of G.G. Doe by Defendant Baird.

126.   Defendants Oquist and Kartsimas are not entitled to governmental immunity under Michigan law.

127.   As a and/or the direct and proximate result of Defendant's conduct, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

     a.   Physical pain and suffering;

     b.   Mental anguish;

     c.   Fright and shock;

     d.   Denial of social pleasure and enjoyments;

e.   Embarrassment, humiliation, and mortification;

f.   Reasonable expenses of necessary medical care, treatment and services;

g.   Loss of earning capacity;

h.   Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VI–
## BATTERY – DEFENDANT BAIRD

128.   Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

129.   Defendant Baird's conduct, asset forth above, constituted a willful and harmful or offensive touching of G.G. Doe.

130.   Defendant Baird's conduct meets the elements of "criminal sexual conduct" as that term is defined under Michigan law, and in particular, Defendant Baird engaged in sexual contact with G.G. Doe by committing an intentional touching of G.G. Doe's intimate parts and/or an intentional touching of the clothing covering the immediate area of G.G. Doe's intimate parts and that intentional touching was done for the purpose of sexual arousal or gratification and/or done for a sexual purpose.

131.   Defendant Baird intended the acts that caused the willful and harmful or offensive touching of G.G. Doe.

132.   Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the

scope of his authority, was not undertaken in good faith but rather with malice and was discretionary.

133.   Defendant Baird is not entitled to governmental immunity under Michigan law.

134.   As a and/or the direct and proximate result of Defendant Baird's conduct, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

    a.  Physical pain and suffering;

    b.  Mental anguish;

    c.  Fright and shock;

    d.  Denial of social pleasure and enjoyments;

    e.  Embarrassment, humiliation, and mortification;

    f.  Reasonable expenses of necessary medical care, treatment and services;

    g.  Loss of earning capacity;

    h.  Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT VII –
ASSAULT – DEFENDANT BAIRD**

135.   Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

136.    The surrounding circumstances of Defendant Baird's conduct created a well-founded apprehension in G.G. Doe of imminent harmful and offensive contact and injury.

137.    The surrounding circumstances of Defendant Baird's conduct created, from G.G. Doe's perspective and belief, an apparent present ability for Defendant Baird to accomplish harmful and offensive contact and injury.

138.    Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the scope of his authority, was not undertaken in good faith but rather with malice and was discretionary.

139.    Defendant Baird is not entitled to governmental immunity under Michigan law.

140.    As a and/or the direct and proximate result of Defendant Baird's conduct, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

    a.    Physical pain and suffering;

    b.    Mental anguish;

    c.    Fright and shock;

    d.    Denial of social pleasure and enjoyments;

    e.    Embarrassment, humiliation, and mortification;

    f.    Reasonable expenses of necessary medical care, treatment and services;

    g.    Loss of earning capacity;

    h.    Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VIII –
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS –DEFENDANT BAIRD

141.   Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

142.   Defendant Baird's conduct, as set forth above, and in particular by inflicting physical and emotional sexual abuse on G.G. Doe, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

143.   Defendant Baird's conduct meets the elements of "criminal sexual conduct" as that term is defined under Michigan law, and in particular, Defendant Baird engaged in sexual contact with G.G. Doe by committing an intentional touching of G.G. Doe's intimate parts and/or an intentional touching of the clothing covering the immediate area of Plaintiff's intimate parts and that intentional touching was done for the purpose of sexual arousal or gratification and/or done for a sexual purpose.

144.   Defendant Baird's conduct was for an ulterior motive or purpose, including, but not limited to, to cause G.G. Doe to suffer severe emotional distress.

145.   Defendant Baird's conduct has caused and will continue to cause G.G. Doe to suffer severe emotional distress.

146.   Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the

scope of his authority, was not undertaken in good faith but rather with malice and was discretionary.

147. Defendant Baird is not entitled to governmental immunity under Michigan law.

148. As a and/or the direct and proximate result of Defendant Baird's conduct, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

   a. Physical pain and suffering;

   b. Mental anguish;

   c. Fright and shock;

   d. Denial of social pleasure and enjoyments;

   e. Embarrassment, humiliation, and mortification;

   f. Reasonable expenses of necessary medical care, treatment and services;

   g. Loss of earning capacity;

   h. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT IX –
## ELLIOTT-LARSEN CIVIL RIGHTS ACT (MCL 37.2101 et seq.) – DEFENDANTS LPS AND BAIRD

149. Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

150.   MCL 37.2102(1) sets forth that "[t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right."

151.   Defendants LPS and Baird are each a "person" as that term is defined under MCL 37.2103(g) and are therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

152.   Defendant LPS is a "political subdivision" as that term is defined under MCL 37.2103(h) and are therefore subject to the Elliott - Larsen Civil Rights Act, MCL 37.2101 *et seq*.

153.   Defendants LPS is a "place of public accommodation" as that term is defined under MCL 37.2301 and are therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

154.   MCL 37.2302 sets forth in relevant part that a "person shall not…deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status."

155.   Defendants LPS is an "educational institution" as that term is defined under MCL 37.2401 and are therefore subject to the Elliott- any of the following:

   a.   Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.
   b.   Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual

38

enrolled as a student in the terms, conditions, or privileges of the institution, because of religion, race, color, national origin, or sex.

142. MCL 37.2103(i) sets forth as follows:

    i.   Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

        i.   Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

        ii.   Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

        iii.   The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

156.   Defendant Baird made unwelcome sexual advances and other verbal or physical conduct or communication of a sexual nature towards G.G. Doe under circumstances and conditions that submission to the conduct or communication was made a term or condition either explicitly or implicitly for G.G. Doe to public accommodations, public services, and education, and in particular, whether she would receive visual impairment instruction.

157.   Defendant Baird made unwelcome sexual advances and other verbal or physical conduct or communication of a sexual nature towards G.G. Doe under circumstances and

conditions that submission to or rejection of the conduct or communication by G.G. Doe was used as a factor in decisions affecting G.G. Doe's public accommodations, public services, and education, and in particular, whether she would receive visual impairment instruction.

158.   Defendant Baird made unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature towards G.G. Doe under circumstances and conditions that the conduct or communication had the purpose or effect of substantially interfering with G.G. Doe's public accommodations, public services, and education and created an intimidating, hostile, and offensive public accommodations, public services, and education environment.

159.   Defendant Baird made unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature towards G.G. Doe under circumstances and conditions that the conduct or communication had the purpose or effect of denying G.G. Doe the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of sex.

160.   Defendant Baird conduct by engaging in physical sexual abuse of G.G. Doe constituted sexual harassment as that term is defined under MCL 37.2103(i) and was therefore discrimination "because of sex."

161.   Defendant Baird is liable under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq* for the violations set forth above.

162.   Defendants LPS as set forth above, is subject to liability under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

163.   Defendants Baird and LPS, are not entitled to governmental immunity under Michigan law for the violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

164.   As a direct and proximate result of the violations of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq, as set forth above, G.G. Doe has suffered and will continue to suffer damages, both economic and non- economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

    a.   Physical pain and suffering;

    b.   Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasure and enjoyments;

    e.   Embarrassment, humiliation, and mortification;

    f.   Reasonable expenses of necessary medical care, treatment and services;

    g.   Loss of earning capacity;

    h.   Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT X –
## FAILURE TO REPORT CHILD ABUSE – DEFENDANTS BAIRD AND OQUIST

165.   Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

166.     The Michigan Child Protection Law ("CPL") imposes a duty on certain individuals to report suspected "child abuse" or "child neglect" and assigns civil liability for failure to fulfill that duty.

167.     MCL § 722.623(1)(a) sets forth, in relevant part, as follows:

> 1. An individual is required to report under this act as follows:
>
>> a.   A…social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher…who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect. Within 72 hours after making an oral report by telephone to centralized intake, the reporting person shall file a written report as required in this act.

168.     "Child abuse" is defined under MCL § 722.622(g) as "harm or threatened harm to a child's health or welfare that occurs though nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy."

169.     "Central registry" as referenced in MCL § 722.623(1)(a) is defined under MCL § 722.622(c) as "the system maintained at the department that is used to keep a record of all reports filed with the department under this act in which relevant and accurate evidence of child abuse or child neglect is found to exist."

170.     The "department" as referenced in MCL § 722.622(c) is defined under MCL § 722.622(q) as "the department of human services."

171.    MCL § 722.633(1) provides that "[a] person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

172.    Defendants Baird and Oquist are each required under the CPL to report child abuse as set forth under MCL § 722.623(1)(a).

173.    Defendant Baird's conduct by inflicting physical and emotional sexual abuse on G.G. Doe constituted child abuse of G.G. Doe as that term is defined under MCL § 722.622(g).

174.    Defendants Baird and Oquist, each had reasonable cause to suspect that G.G. Doe had been subjected to child abuse as that term is defined under MCL § 722.622(g).

175.    Defendants Baird and Oquist, each failed to report child abuse of G.G. Doe of which they had reasonable cause to suspect.

176.    G.G. Doe each suffered damages that were proximately caused by the failure of Defendants Baird and Oquist to report child abuse of G.G. Doe of which those Defendants had reasonable cause to suspect.

177.    Defendant Baird's and Oquist's failure to report child abuse of G.G. Doe together or separately, was the proximate cause of the damages that were suffered by G.G. Doe for such failures in that it was foreseeable that such failures, together or separately, would result in continued child abuse of G.G. Doe.

178.    As a and/or the direct and proximate result of Defendant Baird's and Oquist's failure to report child abuse of G.G. Doe, as set forth above, G.G. Doe has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

a.   Physical pain and suffering;

b.   Mental anguish;

c.   Fright and shock;

d.   Denial of social pleasure and enjoyments;

e.   Embarrassment, humiliation, and mortification;

f.   Reasonable expenses of necessary medical care, treatment and services;

g.   Loss of earning capacity;

h.   Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT XI –
## VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seq.* –DEFENDANT LPS

179.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

180.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

> *"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

181.     Title IX is implemented through the Code of Federal Regulations. 34 C.F.R. Part 106.8(b) provides:

> *"... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints* alleging any action which would be prohibited by this part."

182.     Defendant LPS receives federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

183.     Title IX protects third parties from sexual harassment or violence in a school's education programs and activities. Under Title IX, sexual harassment includes any type of unwelcome conduct of a sexual nature, such as sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

184.     G.G. Doe is a "person" within the meaning of 20 U.S.C. §1681(a).

185.     Defendant Baird's sexual contact and touching of G.G. Doe constitutes discriminatory harassment and sexual misconduct within the meaning of Title IX.

186.     Defendant Baird's conduct and Defendant LPS' deliberate indifference and failure to respond to being on actual notice of Defendant Baird's conduct is a violation of Title IX.

187.     Defendant Baird's actions and conduct while employed by Defendant Baird's actions and conduct while employed by Defendant LPS.

188.     Defendant Baird's discriminatory harassment and sexual misconduct was severe, pervasive, and objectively offensive and effectively barred G.G. Doe's access to educational opportunities and benefits.

189.     The conduct by Defendant Baird was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with G.G. Doe's work or academic

performance or creating an intimidating, hostile, or offensive environment for studying and learning during school.

190.    The environment created from the conduct of Defendant Baird was hostile based on the circumstances, including but not limited to the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

191.    Defendant Oquist was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct committed by Defendant Baird since December 9, 2019.

192.    At all times relevant to this action, Defendant Oquist was an official of LPS with the authority to take corrective action or preventative measures to end and/or remedy the discriminatory harassment and sexual misconduct.

193.    Defendant LPS officials had actual knowledge of Defendant Baird's inappropriate behavior for a significant period of time before the harm that G.G. Doe experienced and during the harm that G.G. Doe was experiencing, yet none of the officials took appropriate steps towards any corrective action or made any effort to protect G.G. Doe or any other students from the harm.

194.    Defendant LPS' deliberate indifference to Defendant Baird's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiffs' rights such that punitive damages are appropriate.

195.    Pursuant to Title IX, Defendant LPS and its officials are required to investigate all allegations of sexual and discriminatory harassment upon receiving a report.

196.    Defendant LPS is subject to liability because despite actual knowledge of Defendant Baird's discriminatory harassment and sexual misconduct, it was deliberately

indifferent and took no action to prevent or remedy continued discrimination after receiving credible reports of inappropriate behavior by Defendant Baird. The lack of adequate response by Defendant LPS was clearly unreasonable in light of the known circumstances.

197.     Defendant LPS acted with deliberate indifference, and in a clearly unreasonable manner by failing to respond to allegations of discriminatory harassment and sexual misconduct so as to protect G.G. Doe and others from such abuse.

198.     As a result of Defendant LPS' deliberate indifference to actual knowledge of Defendant Baird's discriminatory harassment and sexual misconduct, G.G. Doe was subject to further discriminatory harassment and sexual misconduct by Defendant Baird.

199.     Additionally, Defendant LPS failed to adequately supervise Defendant Baird, despite having actual knowledge that Defendant Baird posed a substantial risk of additional discriminatory harassment and sexual misconduct to the minor female students to whom he had unfettered access.

200.     Defendant LPS' failure to formally investigate and take corrective actions to complaints of Defendant Baird's discriminatory harassment and sexual actions to complaints of Defendant Baird's discriminatory harassment and sexual misconduct effectively denied G.G. Doe's educational opportunities and benefits.

201.     As a result of the foregoing, G.G. Doe has suffered extensive damages, has lost educational opportunities, has been unable to continue courses of study, have missed opportunities for classes, and were deprived of equal access to education.

202.     As a result of the foregoing, G.G. Doe suffered injuries including, but not limited to, the following:

       a   Physical pain and suffering;

    b  Mental anguish;

    c  Fright and shock;

    d  Denial of social pleasure and enjoyments;

    e  Embarrassment, humiliation, and mortification;

    f  Reasonable expenses of necessary medical care, treatment, and services;

    g  Loss of earning capacity;

    h  Lost wages;

    i  Loss of educational opportunities;

203.    Any and all injuries or damages that are learned though the course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT XII –**
**BREACH/VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, AS AMENDED AGAINST DEFENDANT LPS**

204.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

205.    The Rehabilitation Act of 1973, as amended, was the first disability civil rights law to be enacted in the United States. It prohibits discrimination in programs that receive federal financial assistance.

206.    Section 504 of The Rehabilitation Act of 1973, as amended, was the first disability civil rights law to be enacted in the United States. It prohibits discrimination in programs that receive federal financial assistance, 504 requires that students with disabilities have the right

to pursuit of their education without suffering discrimination based on their disability. Section 504 specifically states in material part: "no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives federal financial assistance.

207.     Defendant LPS receives federal funding.

208.     Defendant LPS had an obligation to provide Plaintiff G.G. Doe the opportunity to achieve her academic and individual potential free from harassment and discrimination based upon her disability.  Defendant Baird specifically targeted minor female children with disabilities because of their vulnerabilities and vision impairment, including Plaintiff G.G.

209.     Defendant LPS failed to comply with section 504 standards, and breached and violated them, in several ways, included but not limited to: knowingly, carelessly, and with deliberate indifference, etc., depriving Plaintiff G.G. Doe of her civil rights to a discrimination free program of education; namely, her right to be free of sexual abuse that was perpetrated against her due to her disability.

210.     Defendant LPS failed to properly hire, train, supervise, and retain qualified assistance for students with disabilities including Defendant Baird, whom had a history of sexual harassment and misconduct.

211.     Defendant LPS failed to follow its own grievance process and procedures for violations of the 504 Act and for acts of discrimination based on disability including but not limited to, failure to adhere to their own deadlines, failing to inform victims of their rights, failing to conduct a proper investigation into the allegations of discrimination based on

disability and/or sexual battery, harassment, and misconduct, failure to take any disciplinary action against Defendant Baird and/or terminate his employment.

212.     Defendant LPS' violations/breach of obligations under Section 504 of the Act caused Plaintiff to sustain tremendous damages, as well as the loss of education, and other direct and consequential damages.

213.     Plaintiff is entitled to compensatory damages and to be made financially whole for the harm she suffered as a result of Defendant LPS violation of its Section 504 obligations, including emotional pain and suffering, and punitive damages in excess of $75,000.00, in an amount to be determined at trial, plus prejudgment interests, attorney's fees, expenses, cost and disbursements.

### COUNT XIII – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1972, AS AMENDED BY THE AMERICAN'S WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 AGAINST DEFENDANT LPS

214.     Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

215.     The Americans with disabilities Act of 1972, as amended by the Americans with Disabilities Act Amendments Act of 2008, is a comprehensive federal civil rights law. It prohibits discrimination against persons with disabilities, included physical disabilities which substantially limit major life activities, such as reading and learning, are protected under the ADA. Defendant LPS received federal funding.

216.     The ADA defines disability as a legal term rather than a medical one. A disabled person is a person who has a physical or mental impairment that substantially limits one or more major life activities.

217.     Under the ADA, businesses and governments, as well as and those that receive federal aid and assistance, are required to ensure students are not subjected to discrimination based on their disability.

218.     Plaintiff had both a record of disability and impairment known to Defendant LPS and Defendant Baird.  To wit, Defendant Baird was supposed to provide services to Plaintiff specifically because of her vision impairment.

219.     Defendant LPS had an obligation to provide Plaintiff G.G. Doe the opportunity to achieve her academic and individual potential free from harassment and discrimination based upon her disability.  Defendant Baird specifically targeted minor female children with disabilities because of their vulnerabilities and vision impairment, including Plaintiff G.G.

220.     Defendant LPS failed to comply with ADA standards, and breached and violated them, in several ways, included but not limited to: knowingly, carelessly, and with deliberate indifference, etc., depriving Plaintiff G.G. Doe of her civil rights to a discrimination free program of education; namely, her right to be free of sexual abuse that was perpetrated against her due to her disability.

221.     Defendant LPS failed to properly hire, train, supervise, and retain qualified assistance for students with disabilities including Defendant Baird, whom had a history of sexual harassment and misconduct.

222.     Defendant LPS failed to follow its own grievance process and procedures for violations of the ADA and for acts of discrimination based on disability including but not limited to, failure to adhere to their own deadlines, failing to inform victims of their rights, failing to conduct a proper investigation into the allegations of discrimination based on

disability and/or sexual battery, harassment, and misconduct, failure to take any disciplinary action against Defendant Baird and/or terminate his employment.

223.    Defendant LPS' violations/breach of obligations under the ADA caused Plaintiff to sustain tremendous damages, as well as the loss of education, and other direct and consequential damages.

224.    Plaintiff is entitled to compensatory damages and to be made financially whole for the harm she suffered as a result of Defendant LPS violation of the ADA, including emotional pain and suffering, and punitive damages in excess of $75,000.00, in an amount to be determined at trial, plus prejudgment interests, attorney's fees, expenses, cost and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, TIAIRRA CHAMBRY, as Natural Mother and Legal Representative of G.G. Doe, by and through their undersigned counsel, sues the above-named Defendant LIVONIA PUBLIC SCHOOLS, Defendant, JAMES BAIRD, Defendant MELISSA KARTSIMAS; and, Defendant, ANDREA OQUIST, in her official and individual capacity, jointly and severally, for damages as set forth herein in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with post-judgment interest and costs.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues so triable.

DATED this day of October, 6th 2023.

Respectfully submitted,

*/s/ Maurice Davis*
**Maurice Davis, Esquire**
DAVIS LAW GROUP

Michigan Bar No. P76203
27600 Northwestern Hwy, Suite 215
Southfield, MI 48034
TEL: (248) 469-8501
maurice@michigancriminallawyer.com